# Exhibit A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| QUEERDOC, PLLC, | CASE NO. 2:25-mc-00042-JNW |
| Movant, | ORDER |
| v. | |
| U.S. DEPARTMENT OF JUSTICE, | |
| Respondent. | |

## 1. INTRODUCTION

This matter comes before the Court on Movant QueerDoc PLLC's Motion to Quash, Dkt. No. 1, and Motion to Seal, Dkt. No. 2. Respondent, United States Department of Justice (DOJ), opposes both motions. Dkt. Nos. 8, 12. Having reviewed the motions, DOJ's responses, Dkt. Nos. 8, 12, the replies, Dkt. Nos. 11, 13, the relevant record, all other supporting materials, and finding oral argument unnecessary, the Court GRANTS the Motion to Quash and DENIES the Motion to Seal for the reasons explained below.

ORDER - 1

## 2. BACKGROUND

On January 20, 2025, President Trump issued Executive Order 14168, "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government." 90 Fed. Reg. 8615. The order declared it "the policy of the United States to recognize two sexes, male and female," stated these sexes are "not changeable," and characterized "gender ideology" and "gender identity" as a "false claim." *Id.* § 2.

The following week, President Trump issued Executive Order 14187, "Protecting Children from Chemical and Surgical Mutilation." 90 Fed. Reg. 8771. This order characterized gender-affirming medical care as "the maiming and sterilizing of a growing number of impressionable young children" and declared it "a stain on our Nation's history" that "must end." *Id.* § 1. The order directed DOJ to "prioritize investigations and take appropriate action to end deception of consumers, fraud, and violations of the Food, Drug, and Cosmetic Act." *Id.* § 8(c).

On April 22, 2025, Attorney General Pamela Bondi issued a memorandum titled "Preventing the Mutilation of American Children." Dkt. No. 1-1 at 39–45. The memorandum promised that DOJ would "act decisively to protect our children and hold accountable those who mutilate them under the guise of care" and directed the Consumer Protection Branch of DOJ's Civil Division to "undertake appropriate investigations of any violations of the Food, Drug, and Cosmetic Act by manufacturers and distributors engaged in misbranding by making false claims about the on- or off-label use of puberty blockers, sex hormones, or any other drug used to facilitate a child's so-called 'gender transition.'" *Id.* at 43.

ORDER - 2

On June 11, 2025, DOJ's Civil Division issued a memorandum stating it would "use all available resources to prioritize investigations of doctors, hospitals, pharmaceutical companies, and other appropriate entities" consistent with the Executive Orders and Attorney General's directives. *Id*. at 47–48. The Civil Division memo identified two investigative priorities: (1) "possible violations of the Food, Drug, and Cosmetic Act and other laws" related to medications used in gender-affirming care, and (2) False Claims Act violations by providers who "evade state bans on gender dysphoria treatments by knowingly submitting claims to Medicaid with false diagnosis codes." *Id*. at 48–49.

That same day, DOJ served QueerDoc with an administrative subpoena under Section 248 of the Health Insurance Portability & Accountability Act of 1996 (HIPAA), which authorizes subpoenas to aid "[i]n any investigation of . . . a Federal health care offense." Dkt. No. 1-1 at 12–38; 18 U.S.C. § 3486(a)(1)(A)(i)(I).

Founded in 2018, QueerDoc is a small telehealth provider that offers gender affirming care in ten states, including Washington. Dkt. No. 1-1 ¶ 8–9. QueerDoc's stated mission is "to raise the bar in gender affirming care and improve transgender and gender diverse lives through telemedicine-based direct clinical services." *Id.* ¶¶ 8–9. QueerDoc asserts that it is a healthcare provider that prescribes medications, not a manufacturer or distributor of pharmaceutical products, and states that it does not participate in federal insurance programs or submit insurance claims, though it provides patients with superbills they can submit independently. Dkt. No. 13 at 4–5 & n.3. QueerDoc now moves to quash the subpoena and seal the proceedings. Dkt. Nos. 1 and 2.

ORDER - 3

One day after QueerDoc filed its motions, DOJ issued a press release stating it had "sent more than 20 subpoenas to doctors and clinics involved in performing transgender medical procedures on children." Dkt. No. 13 at 3 (citing Press Release, U.S. Dep't of Just., Off. of Pub. Affairs, Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children (July 9, 2025), https://www.justice.gov/opa/pr/department-justice-subpoenas-doctors-and-clinics-involved-performing-transgender-medical [https://perma.cc/M5VZ-9MMS]). Attorney General Bondi declared that "[m]edical professionals and organizations that mutilated children in the service of a warped ideology will be held accountable by this Department of Justice." *Id.* at 3–4.

DOJ's subpoena to QueerDoc contains fifteen document requests seeking materials from January 2020 to present. Dkt. No. 1-1 at 18–20. The requests include:

- "Complete personnel files for each employee, contractor, or affiliate of the Company" (Request 1);
- "All documents, including billing records, insurance claims, internal protocols, or guidance, concerning the use of ICD (i.e., International Classification of Diseases) diagnosis codes" (Request 2);
- All communications with pharmaceutical manufacturers regarding the use of puberty blockers or hormones in connection with gender affirming care for minor patients (Requests 7–9);

ORDER - 4

- "Documents sufficient to identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy" (Request 11);
- All medical records, diagnoses, and treatment documentation for these patients (Requests 12–13);
- All documents relating to billing or coding practices for gender-related care (Requests 4–6, 14–15).

Dkt. No. 1-1 at 18–20.

In addition to investigating billing fraud as outlined in its June 11 memorandum, DOJ contends that its subpoena relates to its investigation of "whether off-label promotion and/or unlawful dispensing of puberty blockers and cross-sex hormones for use by minors violated federal law, including the Food, Drug, and Cosmetic Act ("FDCA")." Dkt. No. 12 at 1.

### 3. DISCUSSION

QueerDoc moves to seal these proceedings from public view, citing safety concerns and the sensitive nature of the medical information at issue. It also moves to quash the administrative subpoena, arguing that DOJ has weaponized its investigative authority to advance the Administration's stated policy goal of eliminating gender-affirming care. While the Court recognizes the sensitive nature of this matter and QueerDoc's legitimate concerns about government overreach, the strong presumption of public access to judicial proceedings requires denial of the motion to seal. But the record compels a different result on the motion to quash:

ORDER - 5

when a federal agency issues a subpoena *not* to investigate legal violations but to intimidate and coerce providers into abandoning lawful medical care, it exceeds its legitimate authority and abuses the judicial process. The Court addresses each motion in turn.

### 3.1 The Court denies the motion to seal because, despite legitimate safety concerns, transparency in judicial proceedings remains paramount when challenging executive power.

The Ninth Circuit demands "'compelling reasons supported by specific factual findings'" to overcome the strong presumption of public access to court records. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). This presumption serves a vital democratic function when the government is a litigant—it allows citizens to monitor both the judicial branch's independence and the executive branch's exercise of power. *In re Admin. Subpoena No. 25-1431-019*, , --- F. Supp. 3d ----, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *2 (D. Mass. Sept. 9, 2025). "'[I]n such circumstances, the public's right to know what the executive branch is about coalesces with the concomitant right of the citizenry to appraise the judicial branch.'" *Id.* (quoting *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987)).

The Local Civil Rules require the party seeking to keep materials under seal to show: (1) "the legitimate private or public interests that warrant the relief sought"; (2) "the injury that will result if the relief sought is not granted"; and (3) "why a less restrictive alternative to the relief sought is not sufficient." LCR

5(g)(3)(B). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana,* 447 F.3d at 1179 (citing *Foltz*, 331 F.3d at 1136).

QueerDoc argues that administrative subpoenas investigating potential criminal violations should be sealed like grand jury proceedings, but this analogy fails. Federal Rule of Criminal Procedure 6(e)(6) instructs that all "subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." The Supreme Court has recognized that the "grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.,* 441 U.S. 211, 218–19 (1979); *see also United States v. Index Newspapers LLC*, 766 F.3d 1072, 1087 (9th Cir. 2014) ("Logic dictates that the record of proceedings concerning motions to quash grand jury subpoenas should be closed," for reasons "including protecting the integrity of the . . . investigation and the safety of the witnesses."). Thus, materials related to motions to quash grand jury subpoenas—which are not subject to a public right of access—are entitled to a presumption of secrecy. *See Forbes Media LLC v. United States*, 61 F.4th 1072, 1084 (9th Cir. 2023).

The Ninth Circuit has found that "[g]rand jury and administrative subpoenas function in similar ways." *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1116 (9th Cir. 2012). But unlike grand jury subpoenas which are sealed by rule and tradition, Congress chose not to automatically cloak HIPAA administrative

ORDER - 7

subpoenas in secrecy. *See* 18 U.S.C. § 3486; Fed. R. Crim. P. 6(e). Indeed, by its explicit terms, Section 3486 permits the government—but not the subpoena recipient—to seek nondisclosure orders in limited circumstances. Congress's decision not to provide for automatic sealing of these proceedings must be respected. *See Conn. Nat. Bank v. Germain,* 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

QueerDoc presents evidence that disclosure might harm its business and cause patients to seek other providers, but these concerns rest on "hypothesis or conjecture" rather than specific facts showing how public access to this litigation—as opposed to the investigation itself—would cause harm. *Kamakana*, 447 F.3d at 1179. The declaration from QueerDoc's CEO establishes that forced production of patient records would damage the doctor-patient relationship, but QueerDoc fails to explain how unsealing legal proceedings about whether such production is required would independently cause harm beyond what DOJ's public statements have already inflicted.

The Court recognizes the cruel irony here—DOJ issued its inflammatory press release declaring that medical professionals have "mutilated children in the service of a warped ideology," one day after QueerDoc filed these motions, effectively destroying any claim to investigative confidentiality while attempting to sway public sentiment against  healthcare providers like QueerDoc. Such conduct appears calculated to intimidate rather than investigate. Yet this troubling behavior by DOJ actually strengthens the case for transparency, not secrecy. The

ORDER - 8

public has a right—indeed, a pressing need—to observe proceedings alleging executive agencies have abused their investigative powers to advance political agendas.

Accordingly, QueerDoc's motion to seal is DENIED. However, the Court will permit redaction of specific patient and provider identifying information in any future filings, consistent with Local Civil Rule 5.2 and HIPAA privacy protections.

**3.2    The Court grants the motion to quash.**

Transgender and gender-diverse individuals are at risk of gender dysphoria, a widely recognized medical condition where individuals "may experience a conflict between the sex they were assigned at birth and the gender with which they identify." *In re Admin. Subpoena No. 25-1431-019*, 2025 WL 2607784, at *1. "Left untreated, gender dysphoria can result in severe physical and psychological harms, including debilitating distress, depression, substance use, self-injurious behaviors, and even suicide." *Washington v. Trump*, 768 F. Supp. 3d 1239, 1272 (W.D. Wash. 2025) (quoting *Edmo v. Corizon, Inc.*, 935 F.3d 757, 769 (9th Cir. 2019) (per curiam)) (internal quotations omitted). "Almost every court and medical organization to address the issue" has recognized the benefit of providing gender affirming care to individuals suffering from gender dysphoria. *Id.* at 1272–73. Several states have codified protections for gender-affirming care. *See, e.g.*, RCW § 74.09.675; Mass. Gen. Laws ch. 12, § 11 I 1/2(b).

The question before the Court is whether DOJ may use its administrative subpoena power to achieve what the Administration cannot accomplish through

ORDER - 9

legislation: the elimination of medical care that Washington and other states explicitly protect. The answer is no.

### 3.2.1 The Ninth Circuit permits judicial review of administrative subpoenas allegedly issued for an improper purpose.

The parties dispute the scope of this Court's review. DOJ contends that judicial review of administrative subpoenas is "quite narrow" and that courts should not examine the government's motivations behind a facially valid investigation.[1] Dkt. No. 12 at 2, 4. QueerDoc argues that controlling precedent authorizes courts to examine whether a subpoena was issued for an improper purpose or in bad faith. Dkt. No. 1 at 11. QueerDoc has the better argument.

QueerDoc cites *United States v. Powell*, for the proposition that administrative subpoenas must be issued "pursuant to a legitimate purpose." 379 U.S. 48 (1964). In *Powell*, the Court found that the IRS did not need probable cause to issue an administrative subpoena seeking the production of corporate tax records from the president of a corporation. *Id.* at 57. But the Court held that an administrative subpoena may not be enforceable if it "would be an abusive use of the court's process[.]" *Id.* at 51. An abuse of process occurs when a subpoena is "issued for an improper purpose, such as to harass the [recipient] or to put pressure

---

[1] The Attorney General is authorized to issue an administrative subpoena requiring "the production of any records or other things relevant" to any investigation relating to a federal healthcare offense and may further require "testimony by the custodian of the things required to be produced concerning the production and authenticity of those things." 18 U.S.C. § 3486(a)(l)(B). The Parties do not meaningfully dispute that the issuance of the Subpoena was procedurally sound: it was signed by Attorney General Bondi, served on QueerDoc, and calls for the production of documents relevant to an investigation within 500 miles of QueerDoc.

ORDER - 10

on [it] to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Id.* at 58.

Citing out-of-circuit authority, DOJ argues that there is no "free-standing" or "free-wheeling" "improper purpose exception," and that it need not "'justify its administrative subpoenas by revealing any facts revealing the motives behind a lawful investigation.'" Dkt. No. 12 at 4 (quoting *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 818 (8th Cir. 2012)). But in *Crystal v. United States*, a case involving a petition to quash third-party summonses issued by the IRS, the Ninth Circuit held that a subpoena may be challenged "on any appropriate grounds, including failure to satisfy the *Powell* requirements or abuse of the court's process." 172 F.3d 1141, 1144 (9th Cir. 1999) (quoting *United States v. Jose*, 131 F.3d 1325, 1328 (9th Cir.1997) (en banc)) (internal quotations omitted); *see also F.D.I.C. v. Garner*, 126 F.3d 1138, 1146 (9th Cir. 1997) (a showing that an "agency is acting in bad faith or for an improper purpose, such as harassment," may "serve as a basis . . . for refusing to enforce" an administrative subpoena).

While the government need not justify its decision to open an investigation, once a recipient makes an adequate showing of bad faith or improper purpose, courts may examine whether the agency is "'pursuing the authorized purposes in good faith.'" *Crystal*, 172 F.3d at 1144-45 (quoting *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 317 n.19 (1978); *see also Garner*, 126 F.3d at 1146. DOJ's attempt to import a narrower standard from another circuit while ignoring controlling Ninth Circuit authority is unavailing—in this circuit, courts both can and do examine whether subpoenas are issued in bad faith.

ORDER - 11

This more muscular review makes particular sense here where DOJ offers only circular reasoning, asserting that because it has "authorized only appropriate investigations," the subpoena must be appropriate. Dkt. No. 12 at 4. Such *ipse dixit* reasoning "would preclude any form of judicial review as the Government's self-proclaimed say-so would always be sufficient to defeat a motion to quash." *In re Admin. Subpoena No. 25-1431-019*, 2025 WL 2607784, at *5.

The Court thus turns to the evidence, which demonstrates that DOJ has abandoned good faith investigation in favor of policy enforcement through prosecutorial coercion.

### 3.3 The record demonstrates DOJ issued the subpoena for an improper purpose.

The timeline tells the story here. First, Executive Orders declared gender-affirming care "a stain on our Nation's history" that "must end." The Attorney General then promised to "hold accountable those who mutilate [children] under the guise of care." DOJ implemented these directives through administrative subpoenas. One day after QueerDoc challenged its subpoena, the Attorney General declared that providers who "mutilated children" would be "held accountable." And within weeks, the White House celebrated that President Trump had "delivered" on his promise to "end" such care, listing hospitals that ceased providing these services. *See* Article, The White House, President Trump Promised to End Child Sexual Mutilation – and He Delivered, (July 25, 2025), https://www.whitehouse.gov/articles/2025/07/president-trump-promised-to-end-child-sexual-mutilation-and-he-delivered/ [https://perma.cc/54DN-4EA9].

ORDER - 12

This is not speculation about hidden motives—it is the Administration's explicit agenda. The Government seeks the "intended effect" of its Executive Orders and these subpoenas to "downsize or eliminate" all gender-affirming care. *See* Article, President Trump is Delivering on His Commitment to Protect Our Kids, The White House (Feb. 3, 2025), https://www.whitehouse.gov/articles/2025/02/president-trump-is-delivering-on-his-commitment-to-protect-our-kids/ [https://perma.cc/DD9Z-WU7Q]. No clearer evidence of improper purpose could exist than the Government's own repeated declarations that it seeks to end the very practice it claims to be merely investigating.

The mismatch between DOJ's stated investigation and QueerDoc's actual operations further reveals the subpoena's pretextual nature. The Attorney General directed investigations of "manufacturers and distributors engaged in misbranding" and providers submitting false insurance claims. QueerDoc is neither. It prescribes medications but does not manufacture or distribute them. It provides patients with superbills but does not submit insurance claims. Dkt. No. 13 at 3–4.

This mismatch is not just a technicality. It suggests that DOJ issued the subpoena first and searched for a justification second. No legitimate investigation would demand thousands of patient records from an entity that cannot, by definition, commit the violations being investigated. DOJ's inability to articulate why it is investigating QueerDoc specifically—beyond noting it is a "prominent"

ORDER - 13

provider—confirms that QueerDoc was targeted for what it does (provide gender-affirming care) rather than how it does it (through any unlawful means).[2]

The breadth of the subpoena requests support this conclusion. For example, Request Numbers 11–13 demand a staggering amount of personal health data related to QueerDoc's patients, including their names, dates of birth, social security number, address, medical diagnoses, and patient intake documents. *See* Subpoena § III.11–13. These requests have little to do with investigating violations of FDCA or FCA. And Request Numbers 7–9 are facially overbroad, as they seek QueerDoc's communications with manufacturers, sales representatives, marketing departments, and medical science liaisons regarding the treatment of gender

---

[2] After briefing concluded, DOJ filed what it styled a "praecipe" containing a declaration from Allan Gordus regarding the government's investigation. Dkt. No. 24. This filing represents a fundamental misunderstanding—or deliberate misuse—of court procedure. Under Local Civil Rule 7(m), a praecipe serves a narrow function: to correct clerical errors or, in limited circumstances, to add documents inadvertently omitted from an original filing. A praecipe "must specify by docket number the document being corrected and the corrections by page and line number" and, if adding documents, must "set forth why the document was not included with the original filing[.]" LCR 7(m). It is not a vehicle for submitting new evidence or supplementing legal arguments after briefing has closed. In contrast, QueerDoc properly filed a Notice of Supplemental Authority under LCR 7(n), which permits bringing new legal authority—but not new evidence or argument—to the Court's attention. Dkt. No. 23. Thus, the Court GRANTS QueerDoc's motion to strike, Dkt. No. 25, and STRIKES DOJ's improper submission at Docket 24. Even if the Court were to consider Mr. Gordus's declaration, his assertions about the scope of governmental resources devoted to this investigation would only further demonstrate the pretextual nature of the subpoena—the devotion of "substantial national investigation" resources with "multiple FBI agents" to investigate a small telehealth provider that neither manufactures drugs nor submits insurance claims underscores that this investigation targets the provision of gender-affirming care itself, not any legitimate federal violation.

ORDER - 14

dysphoria and the use of puberty blockers or hormones generally, not just those used "off-label."

As the Ninth Circuit has recognized, "[a]n administrative subpoena . . . may not be so broad so to be in the nature of a 'fishing expedition.'" *See Peters v. United States,* 853 F.2d 692, 700 (9th Cir. 1988). Yet that is precisely what DOJ tries to do here, as it seeks to rifle through thousands of patient records hoping to find something—*anything*—to justify its predetermined goal of ending gender-affirming care.

In sum, the record before the Court establishes that DOJ's subpoena to QueerDoc was issued for a purpose other than to investigate potential violations of the FDCA or FCA. The Executive Orders, the Attorney General's directives, the mismatch between the stated investigative focus and QueerDoc's operations, and the breadth of the document requests collectively demonstrate that the subpoena serves to pressure providers to cease offering gender-affirming care rather than to investigate specific unlawful conduct.

## 4. CONCLUSION

For the reasons stated above, the Court GRANTS the motion to quash, Dkt. No. 1, and DENIES the motion to seal, Dkt. No. 2. The Clerk is INSTRUCTED to unseal the case file and all documents found on the associated case docket. The Court also GRANTS the motion to strike, Dkt. No. 25, and STRIKES DOJ's improper submission at Docket No. 24.

Dated this 27th day of October, 2025.

*Jamal W.*

Jamal N. Whitehead
United States District Judge

ORDER - 16